Harry J. Bailey
Pro Se, Creditor
862 East 10th Street
Brooklyn, New York 11230
917-459-9499

CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF
NEW YORK
2026 FEB 25 P 3:29
RECEIVED

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**NETANEL A VAKNIN,**<br><br>Debtor. | Chapter 7<br><br>Case No.: **1-25-45973-ess** |

## COMPLAINT TO DETERMINE NONDISCHARGEABILITY OF DEBT

(11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6))

### NATURE OF ACTION

1. Plaintiff brings this action in his individual capacity and does not waive, and expressly reserves, any direct or derivative claims that may exist on behalf of Elite Home Warranty LLC, including all rights to pursue such claims and damages in the appropriate forum.
2. Plaintiff seeks a determination that debts owed to him by Defendant are nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).
3. This adversary proceeding seeks only a determination of nondischargeability. Liquidation of the underlying claims may proceed in state court.

### JURISDICTION AND VENUE

4. This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157.
5. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).
6. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

### PARTIES

6. Plaintiff Harry J. Bailey is an individual residing in New York and a member and judgment creditor with respect to Elite Home Warranty LLC ("Elite").

7. Defendant Netanel Vaknin is the Debtor in the above-captioned bankruptcy case and was the managing member of Elite.

## FACTUAL ALLEGATIONS

### Formation of Relationship and Agreements

8. In or around August 29, 2024, Plaintiff and Defendant executed a Purchase Agreement, Operating Agreement, and Addendum governing Elite. (Exhibit A)

9. The Agreements granted Plaintiff the right to be a working member and required Elite to maintain no less than $1,000,000 in company reserves, including $700,000 required to be maintained in a segregated bank account requiring dual signature approval of Plaintiff and Defendant and further provided that 'Major Decisions'—including actions outside the ordinary course of business—require the affirmative unanimous consent of the members.. (Exhibit A)

10. Defendant, as managing member, owed fiduciary duties to Plaintiff and to Elite.

### Undisclosed Loan Immediately Before Plaintiff's Investment

11. On July 25, 2024 ($50,000), August 2, 2024 ($45,000), and August 9, 2024 ($55,000), Defendant caused Elite to receive a total of $150,000 from Ronen Nahom. (Exhibit B)

12. These transfers constituted a loan.

13. Defendant did not disclose this loan to Plaintiff during negotiations.

14. Instead, the funds were reflected as operating inflows, creating the appearance of stronger revenue and liquidity.

15. Plaintiff invested $1.5 million on August 29, 2024.

### Segregated Account Non-Implementation

16. Defendant exercised unilateral control over Elite's bank accounts and financial activity.

17. Defendant represented that Plaintiff's investment would be used to bolster Elite's reserves and place $700,000 into a segregated account.

18. In sworn testimony, Defendant admitted:

"I don't have the legal background... when it comes to the legal aspects of things I have zero knowledge. Harry's attorney drafted that agreement. I was not really aware of the extent to where — how that can be enforced."

(Exhibit C)

19. In sworn testimony, Defendant did not dispute that the segregated account required by the Agreements had not been opened or funded as required. Instead, Defendant offered

explanations to the court for why the segregated account had not been implemented. (Exhibit C)

20. From approximately January through May 2025, Elite received approximately $2.1 million in revenue. Notwithstanding these funds, Defendant placed no meaningful funds into the segregated account, except for a last-ditch transfer of approximately $20,000 on the morning of a contempt hearing. (Exhibit D)

21. Defendant caused a purported segregated account to be opened; however, the account did not require dual signatures and Defendant unilaterally withdrew funds from it.

22. A compliant segregated account was later opened but was never funded with more than approximately $20,000.

**Unlawful Termination, Selective Payments and Withholding Plaintiff's Compensation**

23. After Plaintiff confronted Defendant regarding misuse of company funds and failure to implement the segregated-account requirement, Defendant terminated Plaintiff on or about December 10, 2024. No contractual "Cause" existed. (Exhibit E)

24. Plaintiff is owed earned compensation. Months after the purported termination, after court orders directing compliance with the segregated-account provision, Defendant offered to pay Plaintiff but only a portion of the amount owed and only from the segregated account. Plaintiff declined to accept payment from the underfunded segregated account. Defendant nevertheless continued making payments to himself and others through Elite's operating accounts without properly funding the segregated account. (Exhibit F)

25. At or around year-end 2024, Defendant authorized year-end raises to nine employees while simultaneously claiming Elite lacked funds to establish the segregated account or reserves, and while contemporaneously withholding Plaintiff's compensation. (Exhibit G)

**Court Findings and Contempt**

26. New York Supreme Court issued orders directing Defendant to fund the segregated account, provide books and records, and comply with financial controls. (Exhibit D)

27. The court found Defendant in civil contempt, finding clear and convincing evidence of willful and deliberate noncompliance, and ordered incarceration unless he purged the contempt. (Exhibit D)

28. Defendant intentionally chose to spend company funds on other purposes rather than comply with court-ordered funding obligations, despite knowing such conduct would injure Plaintiff and violate Plaintiff's contractual and property rights.

**Unauthorized Corporate Bankruptcy**

29. Defendant caused Elite to file a Chapter 7 petition without Plaintiff's consent. The Bankruptcy Court dismissed that case for lack of authority.

**FIRST CAUSE OF ACTION**

§523(a)(2)(A) – False Pretenses, False Representations, Actual Fraud

30. Defendant concealed the Ronen Nahom loan and mischaracterized it as revenue.
31. Defendant knew Plaintiff was investing in reliance on Elite's financial condition.
32. Defendant's concealment and mischaracterization were intended to induce Plaintiff's investment.
33. Plaintiff was damaged in excess of $1.5 million.

**SECOND CAUSE OF ACTION**

§523(a)(4) – Fraud or Defalcation While Acting in a Fiduciary Capacity

34. Defendant was managing member and fiduciary.
35. Defendant diverted company funds, ignored court-ordered financial controls, and exercised unilateral domination.
36. Defendant committed defalcation through conscious and reckless disregard of fiduciary duties.

**THIRD CAUSE OF ACTION**

§523(a)(6) – Willful and Malicious Injury

The New York Supreme Court expressly found that Defendant had multiple available avenues to comply with the Court's directives but chose not to take any action. The Court stated: "There are things that you could have done... Nothing was done. You did not do anything. You did not do anything. Not a thing." (NYSCEF Doc. No. 170 at 24:17–22).

Defendant's knowing refusal to take any steps toward compliance, despite having the ability to do so, constitutes willful and malicious injury to Plaintiff and Plaintiff's property rights.

37. Defendant's conduct was deliberate, knowing, and substantially certain to cause injury.
38. Defendant acted without just cause or excuse.

**PRAYER FOR RELIEF**

Plaintiff requests:

a. Determination that Defendant's debts to Plaintiff are nondischargeable under §§523(a)(2)(A), (a)(4), and (a)(6);
b. Costs and fees;
c. Such other relief as the Court deems just.

Dated: February 25, 2026

Brooklyn, New York

Harry J. Bailey

Harry J. Bailey

Pro Se

862 East 10th Street

Brooklyn, NY 11230

Tel: 917-459-9499